**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER ON MOTIONS IN LIMINE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Kyle Ray DeCoteau, | ) | Case No. 4:08-cr-037 |
| | ) | |
| Defendant. | ) | |

Before the Court is the Defendant's motion in limine filed on December 30, 2009. See Docket No. 68. The Government filed a response on January 5, 2010. See Docket Nos. 71 and 72. The Defendant filed a reply to its motion and a response to the Government's motion in limine on January 8, 2010. See Docket Nos. 73 and 74. For the reasons set forth below, the Court defers ruling on the Defendant's motion in limine and grants the Government's motion in limine.

**I.    BACKGROUND**

The defendant, Kyle DeCoteau, was indicted on June 3, 2008, on two counts of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 1153 and two counts of abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(5) and 1153. DeCoteau is alleged to have sexually abused two children, S.S., who was 6-years old, and R.S.L., who was 10 or 11-years old, at the time of the alleged incidents, between December 2006 and September 2007. The acts are alleged to have occurred within the boundaries of the Turtle Mountain Indian Reservation. On March 19, 2008 and April 24, 2008, Jeanne LeMay, a trained forensic examiner, conducted forensic

interviews of S.S. and R.S.L. at the Northern Plains Children's Advocacy Center in Minot, North Dakota.

DeCoteau has filed a motion in limine to exclude the admission of the following evidence at trial:

1. Testimony from Jeanne J. LeMay regarding a March 19, 2008 interview with S.S., one of the alleged victims in this case, at the Northern Plains Children's Advocacy Center in Minot, North Dakota.

2. Testimony of Jeanne J. LeMay regarding the April 24, 2008, forensic interview of R.S.L., one of the alleged victims in this case, at the Northern Plains Children's Advocacy Center in Minot, North Dakota.

3. The video and audio recordings of the March 19, 2008, and April 24, 2008, forensic interviews of the two alleged victims conducted at the Northern Plains Children's Advocacy Center in Minot, North Dakota.

4. Any hearsay testimony. No notice has been provided from the government that it intends on introducing hearsay. Defendant asserts that any statements made by the alleged victims to law enforcement or forensic interviewers do not fall within any exception to the hearsay rule.

See Docket No. 69.

## II.  LEGAL DISCUSSION

The confrontation clause of the Sixth Amendment to the United States Constitution provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The confrontation clause generally affords a defendant the right to face-to-face confrontation, but it is not guaranteed in every instance. Maryland v. Craig, 497 U.S. 836, 847 (1990). "The confrontation clause 'does not necessarily prohibit the admission of hearsay statements against a criminal defendant.' It does, however, bar 'the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule.'" United States v. Turning

Bear, 357 F.3d 730, 737 (8th Cir. 2004) (quoting Idaho v. Wright, 497 U.S. 805, 813, 814 (1990)). "The Confrontation Clause is satisfied when the hearsay evidence falls within a firmly rooted exception to the hearsay rule or is supported by facts that otherwise demonstrate the statement's reliability; the Confrontation Clause is alternatively satisfied when the hearsay declarant testifies at trial and is available for cross-examination." Bear Stops v. United States, 339 F.3d 777, 781 (8th Cir. 2003). To satisfy the requirements under the confrontation clause, out-of-court statements of child victims in sexual abuse cases "must bear adequate 'indicia of reliability,' either because they fall within a 'firmly rooted hearsay exception' or because they are supported by a showing of particularized guarantees of trustworthiness." United States v. Sumner, 204 F.3d 1182, 1185 (8th Cir. 2000) (quoting Idaho, 497 U.S. at 816).

### A.    DEFENDANT'S MOTION IN LIMINE

In anticipation of the Government calling the alleged victims, S.S. and R.S.L., during trial, DeCoteau seeks to exclude the admission of the forensic interviews and the testimony of forensic examiner Jeanne LeMay. DeCoteau argues that the statements made by S.S. and R.S.L. during the forensic interviews should be excluded because they do not have circumstantial guarantees of trustworthiness. DeCoteau contends that "serious questions exist as to the interview techniques employed by the forensic interviewer, techniques which do not comply with, or adhere to, the general practice standards and guidelines for conducting forensic interviews." See Docket No. 69.

Hearsay is generally not admissible unless specified by the Federal Rules of Evidence. Exceptions to the hearsay rule are set forth in Rules 803, 804, and 807 of the Federal Rules of Evidence. Rule 807 is the residual exception or the "catch-all" to the hearsay rule, and allows the

3

admissibility of hearsay statements in exceptional circumstances where the statements have "circumstantial guarantees of trustworthiness." United States v. Hughes, 535 F.3d 880, 882 (8th Cir. 2008). Rule 807 provides:

> A statement not specifically covered by Rule 803 or Rule 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes it known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

Fed. R. Evid. 807.

In United States v. Thunder Horse, 370 F.3d 745 (8th Cir. 2004), the Eighth Circuit Court of Appeals held that a child victim's statements to a forensic examiner affiliated with a Child Advocacy Center were admissible pursuant to Rule 807 of the Federal Rules of Evidence. In Thunder Horse, the defendant was convicted of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(1), and 2244(c). The defendant was sentenced to 27-months imprisonment. The defendant appealed his sentence to the Eighth Circuit, arguing that the district court improperly permitted the forensic examiner to testify as to the statements made by the victim at the Child Advocacy Center. The Eighth Circuit considered numerous factors in determining that the forensic examiner's hearsay testimony had circumstantial guarantees of trustworthiness, including:

> the training and experience of the interviewer; whether the child was interviewed using open-ended questions; the age of the child and whether the child used age-appropriate language in discussing the abuse; the length of time between the incident of abuse and the making of the hearsay statement; and whether the child repeated the same facts consistently to adults.

Thunder Horse, 370 F.3d at 748 (citing United States v. NB, 59 F.3d 771, 776 (8th Cir. 1995)). The Eighth Circuit determined that the testimony contained substantial guarantees of trustworthiness because (1) the interview was conducted at the Child Advocacy Center only seventeen days after the incident, (2) the forensic examiner had twenty years of experience in interviewing child victims, (3) the forensic examiner asked the victim open-ended questions, and (4) the victim was ten-years old and used child-like terms to describe the incident. Id.

The Government anticipates the evidence will show that sometime between September 2007 and March 2008, S.S. minimally disclosed the alleged abuse to her mother and S.S.'s mother shared this information with S.S.'s biological father. In early March 2008, S.S.'s mother reported the alleged abuse to Dawn Bruce, a licensed social worker, and a criminal investigation resulted. As part of the investigation, Jeanne LeMay conducted forensic interviews of S.S. and R.S.L. on March 19, 2008 and April 24, 2008. The forensic interviews commenced six months after the alleged conduct ceased, but within days of the disclosure to Dawn Bruce.

The Government states that Jeanne LeMay conducted the interviews in accordance with protocol established by the Northern Plains Children's Advocacy Center. Jeanne LeMay will be available to testify as to her training and experience in conducting forensic interviews with child abuse victims and the protocol established by the Northern Plains Children's Advocacy Center in conducting forensic interviews. The Government may seek to introduce testimony by Jeanne LeMay as to the statements made by S.S. and R.S.L. during the March 19, 2008 and April 24, 2008 forensic interviews and the recorded interviews of S.S. and R.S.L. in the event that S.S. and R.S.L. "are unable to testify completely due to fear and/or if S.S. and R.S.L. exhibit an inability to fully

remember the details of the alleged assaults due to the significant delay in advancing this case to trial." See Docket No. 71.

The Government argues that there are circumstantial guarantees of trustworthiness regarding the forensic interviews of S.S. and R.S.L. The Government states that Jeanne LeMay is a trained forensic examiner of children alleged to be the subjects of sexual abuse, has experience in conducting forensic interviews, and continually receives training in the area of forensic interviews. The Government contends that Jeanne LeMay asked open-ended questions during the course of the forensic interviews. The Government contends that S.S., who was 7-years old at the time of the forensic interview, used age-appropriate language to discuss the alleged sexual abuse. The Government further states that S.S.'s statement is corroborated by the statements made by DeCoteau to Federal Bureau of Investigation Special Agent Ryan O'Neil and Bureau of Indian Affairs Special Agent Wayne Thomas.

The Government also argues that the admission of testimony from Jeanne LeMay and the recorded interviews of S.S. and R.S.L. do not violate Crawford v. Washington, 541 U.S. 36 (2004). In Crawford, the United States Supreme Court held that the confrontation clause bars the admission of out-of-court testimonial statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the witness. The Government anticipates that S.S. and R.S.L. will testify at trial and will be subject to cross-examination. DeCoteau does not address whether Crawford would be violated by the admission of the evidence if S.S. and R.S.L. testified at trial, but states that "[t]he government indicates that the children will be testifying and because of the serious questions that exist with regard to the techniques used by the forensic interviewer in this case,

evidence regarding the forensic interviews must be excluded." See Docket No. 73. DeCoteau does not specify what concerns he has regarding the interview techniques used by Jeanne LeMay.

In the recent decision of United States v. Smith, 2010 WL 10379 (8th Cir. Jan. 5, 2010), the Eighth Circuit considered whether it was reversible error for a district court to admit a forensic examiner's lay opinion testimony and the forensic interview to clarify the child victim's trial testimony. In Smith, the defendant was charged with aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 2241(c) and 1153 and abusive sexual contact in violation of 18 U.S.C. §§ 2244(a)(5) and 1153. A forensic examiner conducted a recorded interview of the child victim. At trial, the child victim testified that the defendant had touched her inappropriately on two occasions. Defense counsel called the forensic examiner to discuss an apparent inconsistency between the victim's recorded statement and the statement given at trial. The forensic examiner testified that the victim's testimony at trial and during the forensic interview were consistent based on her experience as a forensic examiner. During the Government's cross-examination of the forensic examiner, the Government sought to admit the forensic interview into evidence. The district court permitted the admission of the forensic interview which was played for the jury. The jury found the defendant guilty of aggravated sexual abuse. The defendant appealed the conviction, arguing, among other things, that the admission of the forensic interview and the forensic examiner's testimony was reversible error.

On appeal, the Eighth Circuit affirmed the district court's decision to admit the recorded interview and testimony of the forensic examiner. The Eighth Circuit found that the district court properly considered the relevant Rule 807 requirements and the Thunder Horse factors before admitting the evidence at trial. The Eighth Circuit noted that a district court is not required to make

a finding on the record as to each of the Rule 807 requirements and the <u>Thunder Horse</u> factors as long as the record demonstrates that the court considered the relevant factors.

At this stage, the Court will defer ruling on the admissibility of the forensic interviews and Jeanne LeMay's testimony. It is well-established that if the alleged victims testify at trial and are subject to cross-examination, the requirements under <u>Crawford v. Washington</u>, 541 U.S. 36 (2004) are satisfied, and the forensic interviews and testimony of Jeanne LeMay may be admissible if the Court finds that the relevant Rule 807 requirements and the <u>Thunder Horse</u> factors are satisfied. If the alleged victims do not testify at trial, the Court will not allow the admission of the contested evidence.

### B. **GOVERNMENT'S MOTION IN LIMINE**

The Government moves to prohibit the Defendant from offering evidence or testimony of the following:

1. The testimony of any lay witness being offered to suggest Defendant lacks the mental capacity to stand trial or lacked criminal responsibility at the time the assaults upon S.S. and R.S.L. occurred.

2. The testimony of any expert witness being offered to suggest Defendant lacks the mental capacity to stand trial or lacked the requisite criminal responsibility at the time the assaults upon S.S. and R.S.L. occurred.

3. Any testimony or evidence of the mental capacity or mental abilities of Defendant being offered in an attempt to nullify the jury.

4. Defendant has not notified the United States that the Defendant plans to offer evidence or testimony of an insanity defense. Accordingly, any such evidence offered at trial is not relevant and should be excluded.

<u>See</u> Docket No. 71.

A defendant who intends to assert the insanity defense must provide notice to the Government. Pursuant to Rule 12.2 of the Federal Rules of Criminal Procedure,

> [a] defendant who intends to assert a defense of insanity at the time of the alleged offense must so notify an attorney for the government in writing within the time provided for filing a pretrial motion, or at any later time the court sets, and file a copy of the notice with the clerk. A defendant who fails to do so cannot rely on an insanity defense. The court may, for good cause, allow the defendant to file the notice late, grant additional trial-preparation time, or make other appropriate orders.

In the Court's pretrial order of June 10, 2008, the Court ordered that all pretrial motions, except motions for continuance and motions in limine, shall be filed no later than thirty days prior to trial. See Docket No. 15. The Court ordered that motions in limine shall be filed at least five court days prior to trial. Pursuant to Rule 12.2, DeCoteau was required to provide notice of an insanity defense thirty days prior to trial. DeCoteau has not satisfied the notice requirement. Accordingly, DeCoteau is prohibited from raising an insanity defense or offering any such evidence to that effect at trial.

The Government also moves to prohibit DeCoteau from introducing any testimony by either an expert or lay witness, or evidence to suggest that he lacked the mental capacity to stand trial and that he lacked the requisite criminal responsibility at the time of the alleged criminal activity. In response, DeCoteau states,

> While the Court has determined that defendant is competent to stand trial, evidence relative to the defendant's limitations, the fact that he is under a court ordered guardianship relative to virtually all matters affecting his life, are issues which defendant believes the jury is entitled to hear, particularly as it relates to the investigation and statements allegedly made by defendant to law enforcement officials. The undersigned can assure the Court and the government that there will be no attempt to engage in a "end run" type of insanity defense.

See Docket No. 73.

In an order dated March 17, 2009, the Court denied DeCoteau's motion to suppress statements he made to FBI Agent O'Neil and BIA Agent Thomas on March 24, 2008 about the

alleged sexual abuse.  See Docket No. 40.  DeCoteau argued that he lacked the capacity to resist pressure from Agent O'Neil to confess, his mother had a guardianship over him on the date he was interviewed by Agent O'Neil, and he could not read or write.[1]  See Docket No. 40.  The Court determined that DeCoteau's statements to law enforcement officers were knowingly and voluntarily made, and that DeCoteau's will was not overborne.  The Court noted there was no indication from the record that DeCoteau expressed any difficulty understanding Agent O'Neil's questions or the circumstances surrounding the interview, and DeCoteau responded appropriately to Agent O'Neil's questions.  The Court determined that DeCoteau's mental limitations were indiscernible during the interview.

The Court finds that some limited evidence concerning DeCoteau's mental limitations will be permitted but only for the limited purpose of providing general background information on DeCoteau.  The Court will allow counsel for DeCoteau to introduce evidence that DeCoteau has a mental disability, that he attended special education classes in the Tribal school system, and that he has had a guardian since his eighteenth birthday.  The Court is of the opinion that the jury is entitled to know of some general background information on DeCoteau.  However, DeCoteau is prohibited from offering any direct or indirect testimony or evidence as to his specific IQ level, intellectual functioning, and mental capacity.  DeCoteau is also prohibited from offering any testimony or evidence that he lacked the requisite criminal responsibility for his actions on account of his mental limitations.  Any attempt by DeCoteau to introduce such evidence beyond general background

---

[1] On the date of his questioning, DeCoteau was a 24-year old high school graduate, and was living in an apartment with his girlfriend and her two minor children.  DeCoteau has been under the guardianship of his mother, pursuant to a Tribal Court order, since his eighteenth birthday.

information about himself would be an impermissible attempt to garner sympathy and/or seek jury nullification.

A hearing was held in Bismarck, North Dakota on August 26, 2009 to determine whether DeCoteau is competent to stand trial. The Court carefully and thoroughly considered the testimony and evidence presented at the competency hearing and issued an order on September 1, 2009, finding by a preponderance of the evidence that DeCoteau is competent to stand trial and assist in his defense. See Docket No. 59. Consequently, DeCoteau is also prohibited from offering any testimony or evidence that he is not competent to stand trial.

### III. CONCLUSION

After carefully reviewing the parties' briefs, the Court **DEFERS RULING** on the Defendant's motion in limine (Docket No. 68) until trial, and **GRANTS IN PART** the Government's motion in limine (Docket No. 72). DeCoteau is prohibited from offering any testimony or evidence (1) that he lacks the mental capacity to stand trial or lacked the requisite criminal responsibility to commit the alleged acts against S.S. and R.S.L., (2) of his mental capacity and mental abilities, and (3) of an insanity defense. DeCoteau will be allowed to offer limited testimony or evidence to the effect that he has a mental disability, that he attended special education classes in the Tribal school system, and that he has had a guardian since his eighteenth birthday.

**IT IS SO ORDERED.**

Dated this 13th day of January, 2010.

/s/ *Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court