**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | **ORDER DENYING DEFENDANT'S** |
| Plaintiff, | ) | **MOTION FOR HABEAS RELIEF** |
| | ) | |
| vs. | ) | Case Nos.    4:08-cr-37 |
| | ) |          4:12-cv-02 |
| Kyle Ray DeCoteau, | ) | |
| | ) | |
| Defendant. | ) | |

_____

Before the Court is Kyle Ray DeCoteau's motion filed pursuant to 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody which was filed on January

10, 2012. See Docket No. 126. The Government filed a response in opposition to the motion on

April 11, 2012. See Docket No. 130. DeCoteau filed a reply on May 9, 2012. See Docket No. 131.

A hearing was conducted on July 17, 2012, in Bismarck, North Dakota. For the reasons outlined

below, the motion is denied.


I.    **BACKGROUND**

The defendant, Kyle Ray DeCoteau, was indicted on two counts of aggravated sexual abuse

of a child and two counts of abusive sexual contact on June 3, 2008. See Docket No. 1. The charges

concerned two young girls who were the daughters of DeCoteau's girlfriend's sister and with whom

he occasionally had unsupervised contact.

DeCoteau filed a motion to suppress on January 28, 2009. See Docket No. 33. He argued

that statements made to federal agents should be suppressed because he had not been advised of his

*Miranda* rights. An evidentiary hearing was held on March 11, 2009. The Court denied the motion

on March 17, 2009, finding that DeCoteau was not in custody during the interview and his statements were made voluntarily.  <u>See</u> Docket No. 40.

DeCoteau moved for a competency hearing on April 3, 2009.  He was evaluated by psychologists for both the Government and the defense.  A competency hearing was held on August 26, 2009.  <u>See</u> Docket No. 58.  Based on the reports from the psychologists and the evidence presented at the competency hearing, the Court determined that DeCoteau was competent to stand trial.  <u>See</u> Docket No. 59.

After a three day jury trial which concluded on January 21, 2010, DeCoteau was convicted on all counts.  <u>See</u> Docket No. 79.  DeCoteau filed a Rule 29 motion for judgment of acquittal as to counts one and two on January 27, 2010.  <u>See</u> Docket No. 81.  The Court granted the motion as to count two on March 2, 2010.  <u>See</u> Docket No. 93.  On May 10, 2010, DeCoteau was sentenced to the mandatory minimum of 360 months on count one, to run concurrent with the sentence of 51-months on count three and 51-months on count four.  <u>See</u> Docket No. 99.  Thereafter, an appeal was taken to the Eighth Circuit Court of Appeals.  DeCoteau argued the Court erred in finding him competent to stand trial, that there was insufficient evidence to support a conviction on count one, and the district court erred in stating it lacked the authority to sentence below the statutory mandatory minimum.  The Eighth Circuit Court of Appeals affirmed the conviction and sentence on January 12, 2011.  <u>United States v. DeCoteau</u>, 630 F.3d 1091 (8th Cir. 2011).

DeCoteau filed this motion and supporting memorandum on January 10, 2012.  <u>See</u> Docket No. 126.  In the motion, DeCoteau raises five claims of ineffective assistance of counsel.  The Government filed a response in opposition to the motion on April 11, 2012.  <u>See</u> Docket No. 130.  DeCoteau filed a reply on May 9, 2012.  <u>See</u> Docket No. 131.

II.     **STANDARD OR REVIEW**

"28 U.S.C. § 2255 provides a federal prisoner an avenue for relief if his 'sentence was imposed in violation of the Constitution or laws of the United States, or . . . was in excess of the maximum authorized by law.'" King v. United States, 595 F.3d 844, 852 (8th Cir. 2010) (quoting 28 U.S.C. § 2255(a)). This requires a showing of either constitutional or jurisdictional error, or a "fundamental defect" resulting in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974); Hill v. United States, 368 U.S. 424, 428 (1962). A 28 U.S.C. § 2255 motion is not a substitute for a direct appeal and is not the proper way to complain about simple trial errors. Anderson v. United States, 25 F.3d 704, 706 (8th Cir. 1994). A 28 U.S.C. § 2255 movant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982). Section 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis, 417 U.S. at 343.


III.    **INEFFECTIVE ASSISTANCE OF COUNSEL**

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. U.S. Const. amend. VI. To be eligible for habeas relief based on ineffective assistance of counsel, a defendant must satisfy the two-part test announced in Strickland v. Washington, 466 U.S. 668, 687 (1984). A defendant must first establish that defense counsel's representation was constitutionally deficient, which requires a showing that counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. This requires showing that defense counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment which resulted in a performance so deficient that it deprived him of a fair trial. Id.

at 687-88.  In considering whether this showing has been accomplished, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.  If the underlying claim (i.e., the alleged deficient performance) would have been rejected, defense counsel's performance is not deficient.  Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996).  Courts seek to "eliminate the distorting effects of hindsight" by examining defense counsel's performance from counsel's perspective at the time of the alleged error.  Id.

Second, it must be demonstrated that defense counsel's performance prejudiced the defense.  Strickland, 466 U.S. at 687.  In other words, under this second prong, it must be proven that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  Id. at 694.  A reasonable probability is one "sufficient to undermine confidence in the outcome."  Wiggins v. Smith, 539 U.S. 510, 534 (2003).  When evaluating the probability of a different result, a court views the alleged error in light of the totality of all the evidence before the jury to gauge the effect of the error.  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Williams v. United States, 452 F.3d 1009, 1013 (8th Cir. 2006).  A court need not address both prongs of the *Strickland* test if the petitioner cannot meet one of them.  466 U.S. 668, 697 (1984).

It is well-established that there is a strong presumption that defense counsel provided "adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  Strickland, 466 U.S. at 690; Vogt v. United States, 88 F.3d 587, 592 (8th Cir. 1996).  A court reviewing defense counsel's performance must make every effort to eliminate hindsight and second-guessing.  Strickland, 466 U.S. at 689; Schumacher v. Hopkins, 83 F.3d 1034, 1036-37 (8th Cir. 1996).  Under the *Strickland* standard, strategic decisions that are made after a thorough

investigation of both the law and facts regarding plausible options are virtually unchallengeable. Strickland, 466 U.S. at 690.

Where a defendant raises multiple claims of ineffective assistance, each claim of ineffective assistance must be examined independently rather than collectively. Hall v. Luebbers, 296 F.3d 385, 692-93 (8th Cir. 2002); Griffin v. Delo, 33 F.3d 895, 903-04 (8th Cir. 1994). Cumulative error will not justify habeas relief. Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir. 1990).


A.    CLAIM ONE - COMMENTS BY THE COURT

DeCoteau contends that his defense counsel was ineffective in failing to object to the Court's questioning of prosecution witness Kelly Schroeder. DeCoteau contends the Court's questioning about Kelly Schroeder's age "poisoned the juror's minds" because any sexual activity between DeCoteau and Kelly Schroeder would have been a felony under state law. See Docket No. 127, p. 7. DeCoteau also contends the information elicited from Kelly Schroeder by the Court allowed improper bad acts evidence to be presented to the jury and defense failed to object.

At the conclusion of the questioning of Kelly Schroeder by counsel, the Court questioned Ms. Schroeder as follows:

BY THE COURT:

Q.    Just so I'm clear, Ms. Schroeder, you began dating Kyle DeCoteau on December 31, 2006?

A.    Yes.

Q.    Then did you turn 17 on January 1st of 2007?

A.    Yes.

Q.    Okay. And so you were 17 the entire time you were dating.

**A.**     Yeah.

       THE COURT:  All right.  That's all I have.  Anything else?

       MS. RUSSELL (Prosecutor) :  I have nothing additional.

       MR. SCHMIDT (Defense Counsel):  No.

<u>See</u> Docket No. 110, p. 48 (Trial Tr. p. 180).  The questions asked by the Court were virtually the same questions asked of the witness on direct examination.  <u>See</u> Docket No. 110, p. 32.

      A federal judge conducting a jury trial is more than a moderator.  <u>Llach v. United States</u>, 739 F.2d 1322, 1329 (8th Cir. 1984).  A trial judge is the governor of the trial with an obligation to assure its proper conduct.  One of the chief obligations of a trial judge is to ensure there is no misunderstanding of a witness's testimony.  <u>Ray v. United States</u>, 367 F.2d 258, 262 (8th Cir. 1966).  In order to clarify testimony and elicit necessary facts, a trial judge may ask questions of witnesses.  <u>United States v. Clark</u>, 26 F.3d 1458, 1464 (8th Cir. 1994); Fed. R. Evid. 614(b).  If the trial judge does ask questions he must make sure to preserve an attitude of impartiality and not give the jury the impression he believes the defendant is guilty.  <u>Id.</u>  Only if the trial judge's statements cause prejudicial error which is readily apparent will reversal of a conviction be warranted.  <u>Llach</u>, 739 F.2d at 1329.

      In this case the Court was merely trying to clarify Kelly Schroeder's earlier testimony as to when she started dating DeCoteau and how old she was at the time.  This information had been elicited at the beginning of her direct examination.  No new information was disclosed as a result of the Court's questions.  <u>See</u> Docket No. 110, p. 32 (Trial Tr. p. 164).  The time-frame of the relationship between Schroeder and DeCoteau, and how she was sure of the relevant dates, was relevant to the charges which referenced the same period of time.  The Court only inquired about

their dating relationship.  The Court did not ask any questions pertaining to whether Schroeder and DeCoteau had a sexual relationship.  Establishing the age of a witness is neither uncommon nor objectionable.

The Court was careful not to express any opinion about or comment on Kelly Schroeder's testimony.  In addition, the Court provided both counsel an opportunity to further question Schroeder in light of the Court's questions.  <u>See</u> <u>United States v. Jerde</u>, 841 F.2d 818, 824 (8th Cir. 1988).  The Court specifically instructed the jury in both the preliminary and final jury instructions that questions are not evidence, and nothing the Court said was intended to suggest what the Court thought of the evidence or what the verdict should be.  <u>See</u> Docket Nos. 76, p. 5 and 77, p. 16.  The questioning of Kelly Schroeder under the circumstances was harmless and defense counsel's decision not to object was neither unreasonable nor prejudicial.


## B.       <u>CLAIM TWO - COMPETENCY OF COMPLAINING WITNESSES</u>

DeCoteau's second claim of ineffective assistance is that defense counsel failed to challenge the competency of the two complaining witnesses, S.S. and R.S.  DeCoteau argues the two witnesses, who were age nine and thirteen when they testified, had psychological problems and learning disabilities.

All persons, including children, are presumed competent to testify.  <u>United States v. Kelly</u>, 436 F.3d 992, 996 (8th Cir. 2006); Fed. R. Evid. 601.  The test of competence for a child is whether the child has the requisite intelligence and mental understanding to recall and describe an occurrence. <u>United States v. Spotted War Bonnet</u>, 882 F.2d 1360, 1363 (8th Cir. 1989), vacated on other grounds, 497 U.S. 1021 (1990).  A competency examination may be conducted only upon written motion and

accompanied by an offer of proof of incompetency. 18 U.S.C. § 3509(c)(3). A compelling reason for a competency hearing as to a child must be shown, and it is well-established that age alone is not a compelling reason. 18 U.S.C. § 3509(c)(4). Questions asked of a child at a competency hearing must be age appropriate and focus on determining the child's ability to understand and answer simple questions. 18 U.S.C. § 3509(c)(8).

It is always difficult for a child to testify about sexual abuse he or she was subjected to. This does not mean the child is incompetent but it certainly makes the job of counsel more difficult. The difficulties encountered in this case were not unusual or surprising. When a child has difficulty testifying the jury may afford the testimony of the child such weight and credibility it thinks appropriate. See Kelly, 436 F.3d at 996. Discretion favors allowing a minor witness to testify as questions of competence can best handled by the jury. Id.

DeCoteau has failed to demonstrate that S.S. and R.S. were not competent. The Court has carefully reviewed the trial testimony of both children and is convinced they were both competent to testify. Both minor children were able to testify as to their names, ages, where they lived and who they lived with, what grade they were in, and the difference between the truth and a lie. See Docket No. 109, pp. 36-69, 106-127 (Trial Tr. pp. 36-69, 106-127). R.S. testified she was in the seventh grade and had recently been named student of the month while receiving good grades, mostly A's and B's. See Docket No. 109, pp. 38-39 (Trial Tr. pp. 38-39). She was able to identify Kyle DeCoteau as the individual who assaulted her. See Docket No. 109, pp. 41, 50 (Trial Tr. pp. 41, 50). S.S. initially had a very difficult time testifying but after a break was able to describe the sexual abuse she suffered and identified DeCoteau as the abuser. See Docket No. 109, pp. 121-23 (Trial Tr. pp.

121-23).  The Court finds that both girls were competent to testify at trial and, had defense counsel challenged their competency, the challenge would have failed.


### C.  CLAIM THREE - LEADING QUESTIONS BY THE GOVERNMENT

DeCoteau's third claim of ineffective assistance of counsel is that his attorney failed to effectively remedy leading questions asked by the prosecutor during the direct examination of S.S.

As a general rule, leading questions should not be used during direct examination unless necessary to develop a witness's testimony.  United States v. Anderson, 446 F.3d 870, 876 (8th Cir. 2006); Fed. R. Evid. 611(c).  The control of leading questions is left to the discretion of the trial judge.  Id.  It is not automatically improper for a prosecutor to ask leading questions and for a trial judge to permit their use.  United States v. Fenner, 600 F.3d 1014, 1022 (8th Cir. 2010).  A trial judge's discretion is particularly deferential when the witness is a young victim of sexual abuse. United States v. Demarrias, 876 F.2d 674, 678 (8th Cir. 1989).

Defense counsel made several objections as to leading questions during the testimony of S.S. See Docket No. 109, pp. 62, 110, 118-21 (Trial Tr. pp. 62, 110, 118-21).  Six of the seven objections were sustained.  Given that S.S. was nine years old when she testified and the victim of sexual abuse, her reluctance to testify was understandable and a certain amount of leading was necessary to develop her testimony.  After a thorough review of the trial transcript, the Court fails to see any deficient performance or prejudice in this regard.  In addition, S.S. was subjected to thorough cross-examination at trial by defense counsel.  See Docket No. 109, pp. 112-14, 123-27 (Trial Tr. pp. 112-14, 123-27).

DeCoteau contends the production and introduction of S.S.'s handwritten note wherein she revealed the name of her abuser was the product of leading questions and highly improper. This writing occurred in Court in front of the jury when S.S. was reluctant to say aloud the name of her abuser. DeCoteau cites to a portion of the trial transcript wherein the prosecutor asks about a scribbled out name on the piece of paper which was introduced as Exhibit 10. The exchange was as follows:

**Q**.	(MR. DELORME CONTINUING) [S.S.] you wrote this name on this paper, right?

**A**.	Mm-hmm.

**Q**.	Okay.

>	THE COURT: [S.S.] can you answer "yes" or "no" rather than "mm-hmm"?

>	THE WITNESS: Mm-hmm.

>	THE COURT: Okay.

**Q**.	(MR. DELORME CONTINUING) Okay. And the name you wrote on this paper is spelled K-I-E-L-E -- E-L-Y – or I? Is that the name you wrote on this paper?

**A**.	Yes.

**Q**.	Okay. Now when you wrote that name, do you mean it to be the name of Kyle?

**A**.	Yes.

**Q**.	Now, when you wrote this first one, you just scribbled out one because you thought you made a mistake on it?

**A**.	Yes.

**Q**.	But the name you actually wrote is Kyle.

**A.**     Yes.

> MR. DELORME (Prosecutor):  Your Honor, move to enter Government's Exhibit Number 10 into evidence.

> MR. SCHMIDT (Defense Counsel):  Same objection.

> THE COURT:  I need to see it.  Government's Exhibit 10 will be received.

<u>See</u> Docket No. 109, p. 114-15 (Trial Tr. pp. 114-15).

DeCoteau contends this exchange amounted to the prosecutor dictating S.S.'s handwritten note.  This overstates what actually occurred.  Everyone in the courtroom, including the jurors, watched S.S. write the name down on a piece of paper.  It clearly was not dictated.  When S.S. was examined by defense counsel, she explained that her first attempt to write the name down resulted in a spelling mistake which she crossed out.  <u>See</u> Docket No. 109, p. 113-14, (Trial Tr. pp. 113-14).  After the cross-examination of S.S. concerning Exhibit 10, defense counsel objected to its introduction.  <u>See</u> Docket No. 109, p. 114 (Trial Tr. p. 114).  The prosecutor then engaged S.S. in the exchange set forth above.  After this exchange, the prosecutor again offered Exhibit 10, defense counsel objected a second time, and the Court received the exhibit.  <u>See</u> Docket No. 109, p. 115 (Trial Tr. p. 115).  Later in her direct testimony, S.S. clearly articulated who her abuser was.  <u>See</u> Docket No. 109, p. 121 (Trial Tr. p. 121).  Exhibit 10 was available to the jury during deliberations and open to their interpretation in light of what they saw firsthand and heard in the courtroom while S.S. was on the witness stand.  Given that defense counsel objected to the introduction of Exhibit 10, he cannot be faulted for his trial performance.  This issue certainly could have been raised on appeal but the Court fails to see the egregious error DeCoteau finds in this procedure.  The Court finds that ineffective assistance of counsel has not been demonstrated.

**D.    CLAIM FOUR - MIRANDA WARNING**

DeCoteau's fourth claim of ineffective assistance is that his defense attorney failed to raise the *Miranda* suppression issue on appeal.  Prior to trial, defense counsel moved to suppress certain statements DeCoteau made to federal law enforcement officers.  DeCoteau was not advised of his *Miranda* rights before the interview was conducted and this was the basis for the pretrial motion to suppress.  The Court denied the motion following an evidentiary hearing and found that DeCoteau was not in custody during the interview and *Miranda* warnings were not required.  See Docket No. 40.

In order to establish ineffective assistance of counsel it must be shown that counsel's performance was both deficient and prejudicial.  United States v. Brown, 528 F.3d 1030, 1032 (8th Cir. 2008) (applying the Strickland standard).  Failure to raise a claim on appeal is presumed to be sound strategy absent evidence to the contrary.  Id.  Effective appellate advocacy often requires abandoning weaker arguments in order to focus on the strongest issues.  Horne v. Trickey, 895 F.2d 497, 500 (8th Cir. 1990).  In order to establish prejudice on a claim of ineffective assistance of appellate counsel, a defendant must show there is a reasonable probability that the appellate court would have reversed the trial court's determination.  Furnish v. United States, 252 F.3d 950, 952 (8th Cir. 2001).

DeCoteau argues that defense counsel should have raised the *Miranda* issue on appeal without demonstrating why the Court was wrong to deny his motion.  In effect, DeCoteau asks the Court to second guess defense counsel's decision to forego an issue on appeal and presume that prejudice occurred.  It is clear that DeCoteau must convince this Court that he would have prevailed on appeal if the issue had been raised to the Eighth Circuit Court of Appeals.  The Court held an evidentiary

hearing on DeCoteau's motion to suppress and issued a twenty-page order explaining why DeCoteau's motion was denied. See Docket No. 40. There has been no showing that the Court's findings of fact were clearly erroneous or that its conclusion that DeCoteau was not in custody was contrary to law. United States v. Makes Room, 479 F.3d 410, 414 (8th Cir. 1995). In the interests of fairness, the Court has again thoroughly reviewed its order denying DeCoteau's motion to suppress and remains convinced it made the right decision.

### F.    CLAIM FIVE - QUALIFICATIONS OF GOVERNMENT'S EXPERT

For his fifth claim of ineffective assistance, DeCoteau contends defense counsel failed to object to the qualifications of the psychological expert called by the Government as an expert witness at the competency hearing. DeCoteau contends Dr. Lisota was not qualified to testify as an expert because the competency evaluation he conducted was his first. DeCoteau also contends defense counsel failed to properly examine Dr. Lisota regarding his qualifications and should have objected to his testimony.

Expert witness testimony is covered by Rule 702 which provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

**(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

**(b)** the testimony is based on sufficient facts or data;

**(c)** the testimony is the product of reliable principles and methods; and

**(d)** the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

DeCoteau's contention that the competency evaluation conducted by Dr. Lisota was his first is not accurate. In fact, Dr. Lisota had conducted seventeen such evaluations. See Docket No. 108, p. 24. Sixteen of those involved evaluating both competency and criminal responsibility while the evaluation in this case was for competency only. Even if this had been Dr. Lisota's first competency evaluation, the Court finds that he would be qualified as an expert by virtue of his knowledge, training, education, and experience. Dr. Lisota is a forensic psychologist at the North Dakota State Hospital. See Docket No. 108, p. 5. He has a Ph. D. in clinical psychology, has additional training in forensic psychology, and is a licensed forensic psychologist in the State of North Dakota. See Docket No. 58-2.

Dr. Lisota was cross-examined extensively by defense counsel. See Docket No. 108, p. 23-37. The defense called its own expert psychologist, Dr. Peterson, who commented on Dr. Lisota's findings. See Docket No. 108, p. 45 Both psychologists submitted written reports which the Court carefully reviewed prior to finding that DeCoteau was competent to stand trial. Both experts agreed DeCoteau had a full scale IQ of 55-57, was illiterate, and suffered from a mental disease or defect. See Docket No. 108, pp. 15, 16, 37, 53, 64 and 66. In finding DeCoteau competent, the Court noted that 'both psychologists are well-trained, competent, and capable professionals whose opinions are reasonable and straight-forward." See Docket No. 59, p. 8. The Court's opinion has not changed. There was no reason for defense counsel to object to Dr. Lisota's testimony from a qualification standpoint although counsel vigorously disagreed with Dr. Lisota's opinion that DeCoteau was competent to stand trial. Any objection based upon Dr. Lisota's qualifications would have been overruled. The Court has carefully reviewed the transcript of the competency hearing, finds no

deficiency in defense counsel's efforts, and remains convinced that DeCoteau was fully competent to stand trial.

III.    <u>CONCLUSION</u>

The Court has carefully reviewed the entire record and relevant case law.  It is **ORDERED** that:

1)    DeCoteau's 18 U.S.C. § 2255 motion is **DENIED** with prejudice.

2)    The Court certifies that an appeal from the denial of this motion may not be taken in forma pauperis because such a appeal would be frivolous and cannot be taken in good faith.  <u>Coppedge v. United States</u>, 369 U.S. 438, 444-45 (1962).

3)    Upon the entire record before the Court, dismissal of the motion is not debatable, reasonably subject to a different outcome on appeal, or otherwise deserving of further proceedings.  <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983).  Therefore, a certificate of appealability will not be issued by this Court.

4)    If the defendant desires further review of his motion he may request issuance of a certificate of appealability by a circuit judge of the Court of Appeals for the Eighth Circuit in accordance with <u>Tiedeman v. Benson</u>, 122 F.3d 518, 520-22 (8th Cir. 1997).

**IT IS SO ORDERED.**

Dated this 30th day of July, 2012.

<u>/s/ *Daniel L. Hovland*</u>
Daniel L. Hovland, District Judge
United States District Court